1511-CC00027

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

**IN THE 11th JUDICIAL CIRCUIT COURT,
ST. CHARLES COUNTY, MISSOURI**

| | |
|---|---|
| GINA THOMPSON and KAREN MCCABE, *on behalf of themselves and all others similarly situated*, | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. |
| v. | ) |
| | ) Div. |
| CITY OF ST. PETERS, | ) |
| Serve: Len Pagano | ) |
| City of St. Peters | ) |
| One St. Peters Centre Blvd. | ) |
| St. Peters, MO 63376 | ) |
| | ) |
| REDFLEX TRAFFIC SYSTEMS, INC., | ) |
| Serve: National Registered Agents, Inc. | ) **JURY TRIAL DEMANDED** |
| 120 South Central Ave. | ) |
| Clayton, MO 63105 | ) |
| | ) |
| | ) |
| and DOES 1 through 24 inclusive, | ) |
| | ) |
| Defendants. | ) |

## CLASS ACTION PETITION

Plaintiffs, on behalf of themselves and all others similarly situated, by and through their undersigned attorneys, and for their Class Action Petition against the City of St. Peters, Missouri and Redflex Traffic Systems, Inc., as well as DOES 1 through 24, corporate entities currently unknown, ("Redflex" and collectively "Defendants"), state as follows:

### INTRODUCTION

1.      The red light camera program run by Defendants City of St. Peters and Redflex does not comport with Missouri statute or the Missouri Constitution.  *See, e.g., City of St.*

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

*Peters v. Roeder*, No. ED 100701, 2014 WL 2468832 (Mo. Ct. App. June 3, 2014); *Edwards v. City of Ellisville*, 426 S.W.3d 644 (Mo. Ct. App. 2013); *Damon v. City of Kansas City,* No. 75363, Feb. 26, 2014 Order (Mo. App.  W.D. 2013).

2.      Plaintiffs bring this class action to expose and seek redress for a void, unlawful, and unconstitutional scheme that Defendants have operated under the guise of a municipal public safety program known as red light cameras ("Cameras").  Through their use of the Cameras, Defendants have violated state and federal laws as well as the Constitutional rights and immunities afforded to Plaintiffs and Class.  As such, Plaintiffs and Class seek a declaration that Defendants' conduct is unconstitutional and, among other things, that Defendants return their ill-gotten gains to Plaintiffs and Class.

3.      As a direct and proximate result of Defendants' improper conduct as detailed herein, Plaintiffs and Class have been damaged in an amount to be proven at trial.  Additionally, as a direct and proximate result of Defendants' illegal conduct as detailed herein, Plaintiffs and Class have conferred a benefit upon Defendants in the form of payment of purported "fines" and/or accounts receivable under circumstances where their retention by Defendants would be unjust.  Finally, Defendant should be enjoined from continuing to prosecute such void ordinances, and collecting "fines" thereon.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction over Defendant St. Peters because it was formed under the laws of the State of Missouri and is located within St. Charles County, Missouri.

5.      This Court has jurisdiction over Defendant Redflex because Redflex does business in the State of Missouri, has contracted with a Missouri entity (the City of St. Peters), has acted under color of Missouri state law, has violated Missouri law in the State of Missouri,

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

and has sufficient continuing and minimum contacts with the State of Missouri as to purposefully avail itself of the benefits and protections offered by this State and Redflex could reasonably expect to be haled into court in this State.

6.      All relevant conduct giving rise to this action took place in St. Charles County within the State of Missouri; thus this Court has jurisdiction over this action and the parties.

7.      Plaintiffs and Class are all Missouri citizens, many of whom reside in St. Charles County.

8.      Plaintiff and Class seek a refund of all monies paid by Missouri citizens to Defendants pursuant to the Ordinance, which based upon publically available data, is believed to be in excess of $25,000.

## PARTIES

9.      Plaintiff Gina Thompson ("Plaintiff Thompson" or "Named Plaintiff Representing Subclass 1") resides in St. Charles County, Missouri.

10.     Plaintiff Karen McCabe  ("Plaintiff McCabe" or "Named Plaintiff Representing Subclass 2") resides in St. Charles County, Missouri.

11.     This action is brought by Plaintiffs on behalf of themselves and a proposed class of persons defined as all Missouri citizens who received a red light camera Citation pursuant to the Ordinance from the date the first Citation was issued until the date a class is certified by the Court (hereinafter "Class" or "the proposed Class"), and who fall within the following two subclasses:

   a.  Missouri citizens who received a Citation pursuant to Ordinance 335.095 and
       paid the fine ("Subclass 1"); and

   b.  Missouri citizens who received a Citation pursuant to Ordinance 335.097, and

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

paid the fine ("Subclass 2").

12.     Plaintiffs and Class reside in the State of Missouri and are Missouri citizens.

13.     Plaintiff Thompson paid the $110.00 penalty after receiving at least one Citation in the mail pursuant to Ordinance 335.095 around 2012 and/or 2013.

14.     Plaintiff McCabe paid the $110.00 penalty after receiving at least one Citation in the mail pursuant to Ordinance 335.097 around 2013 and/or 2014.

15.     Defendant St. Peters is a city located within St. Charles County operating under the laws of the State of Missouri, and is the governmental entity responsible for passing the Ordinance as well as codifying it into the Code of Ordinances of St. Peters.

16.     Defendant Redflex Traffic Systems, Inc. is a for-profit Delaware corporation conducting business within this District with its principle place of business in the State of Arizona.  Redflex markets, installs, operates, and/or maintains red light camera and speed camera products and services to and/or for municipal governments throughout the country.

17.     Does 1-24 are principals, agents, owners, and/or business entities related to or affiliated with Redflex Traffic Systems, Inc. whose identities are currently unknown to Plaintiffs.  One or more of these entities may be joined as parties once their identities are disclosed through discovery.

## FACTUAL ALLEGATIONS

18.     Plaintiffs and Class are vehicle owners and Missouri citizens who received at least one "Notice of Violation" via mail for allegedly violating the below-referenced Ordinances.

19.     Plaintiffs and Class seek a refund of all monies paid by Missouri citizens to Defendants pursuant to the Ordinance, which based on publicly available data is in excess of

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

$25,000; and Plaintiffs seek substantial relief from Defendants.

20.     Plaintiffs bring this class action *not* to pave the way for people to run red lights with impunity, but rather to expose a void, unlawful, and unconstitutional ordinance scheme that Defendants have exploited to engage in an underhanded practice of persecuting and bilking Missourians under the guise of a public safety program known as red light cameras ("Cameras").   Not only do statistics gathered from The St. Peters Police Department suggest an increase in accidents and injuries at some intersections where the cameras are installed due to rear-end collisions, see http://www.newsmagazinenetwork.com/2014052047718/st-charles-county-votes-to-put-red-light-camera-ban-on-november-ballot-2/ (last visited September 27, 2014), but upon information and belief, the ordinance is actually a revenue-generating scheme put into motion by the Defendants under the guise of legitimate municipal action.

21.     Since 2006, the cameras have resulted in at least $1,000,000 to St. Peters, *id.*, and upon information and belief, an even larger amount of revenue for Redflex, *see* http://www.redflex.com/index.php/en/solutions/redflex-red-light-enforcement (last visited October 12, 2014) (noting only the "[p]otential" that municipalities such as St. Peters may "generate surplus funds").

### *Background Regarding The St. Peters Traffic Code and Missouri Law.*

22.     St. Peters has long prohibited vehicle operators from driving through an intersection when a traffic signal displays a steady (i.e., non-flashing) red light.  Specifically, the St. Peters Traffic Code provides

> Except when directed to proceed by a Police Officer or traffic control signal, every driver of a vehicle approaching a stop sign shall stop before entering the crosswalk on the near side of the intersection or, in the event there is no crosswalk, shall stop at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

traffic on the intersecting roadway before entering the intersection. Section 335.040; Ord. No. 496 § 1(B), 3-22-1979.

23.     This language is substantively identical to, and harmonious with, the language used in MO. REV. STAT. § 304.281.1 (3), and has been applied as such.

24.     Both St. Peters Traffic Code Section 335.040; Ord. No. 496 § 1(B), 3-22-1979 and MO. REV. STAT. § 304.281.1(3) require the prosecuting entity to prove that the accused is the person that was driving at the time of the alleged violation beyond a reasonable doubt.

25.     The State of Missouri uses a "point system" to ensure that unsafe drivers have their driving privileges suspended or revoked when a sufficient number of traffic violations have occurred, which is codified at MO. REV. STAT. § 302.302. This section provides that all moving violations *other* than those explicitly set forth therein carry the imposition of 2 points against an offender's license.  MO. REV. STAT. § 302.302.1(1).  Because failure to stop at a steady red light is *not* expressly set forth, it carries a penalty of 2 points against a driver's license in the event of a conviction.

26.     The purpose of the point system established by Section 302.302 is the protection of the public from dangerous drivers. *James v. Director of Revenue*, 893 S.W.2d 406, 407 (Mo. Ct. App. W.D. 1995) (quoting *Rudd v. David*, 444 S.W.2d 457, 459 (Mo. 1969)). Because a system without a mandatory assessment of points would do little to protect the public, Missouri Courts have found that the context of "shall" in Section 302.302 indicates a legislative intent to mandate the assessment of points for certain offenses. *See Roeder*, No. ED 100701, 2014 WL 2468832 (citing *Brown v. Director of Revenue*, 97 S.W.3d 82, 84 (Mo. Ct. App. S.D. 2002) for the proposition that the Director has "no discretion from revoking [ ] driving privileges where the accumulation of points meets the statutory amount").

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

27.     Violations of MO. REV. STAT. § 304.281.1(3) and St. Peters Traffic Code Section 335.040; Ord. No. 496 § 1(B), 3-22-1979 have long been recognized to constitute moving violations, and convicted violators of those provisions have had 2 points assessed against their licenses.  The aforementioned statutes and ordinances regarding vehicle operators' behavior at a steady red light are criminal in nature.

28.     MO. REV. STAT. § 302.225, provides that when convictions pertaining to moving violations occur, the court having jurisdiction  over the offense shall forward to the Department of Revenue a record of such conviction.

29.     St. Peters has vested the authority to investigate and enforce all traffic laws to its Police Department. R.O. 2007 § 310.010; Ord. No. 496 § 1, 3-22-1979, Ord. No. 3820 § 8, 4-24-2003.  St. Peters is not believed to have ever adopted or enacted any ordinance delegating the authority to investigate or enforce traffic laws – by issuing tickets or otherwise – to any private entity.

30.     Aside from specifically-identified penalties, St. Peters claims the general authority to punish violation of its ordinances or regulations promulgated thereunder with fines of "not more than five hundred dollars ($500.00) or by imprisonment for a period not to exceed ninety (90) days, or by both such fine and imprisonment." Ord. No. 5247 § 5.

### *Defendants' Illegal Red Light Camera Scheme Began In 2006.*

31.     At all times relevant to this action and beginning around 2006, Redflex and St. Peters began working to formulate, implement, and operate a program purportedly aimed at the automated enforcement of certain traffic regulations (the "Redflex Program").

32.     To put the Redflex Program into effect, on or about June 16, 2006 The St. Peters Board of Alderman, acting without voter approval on the matter, enacted the "Automated

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

Enforcement of Traffic Control Signal Regulations" Ordinance, R.O. 2007 §335.095; Ord.

No. 4412 §1, 1-12-2006; Ord. No. 4536 §1, 6-16-2006 (the "2006 Ordinance").

33.    As part of the Redflex Program, Redflex worked with St. Peters in Missouri to

install and operate the Cameras and to provide services including reviewing alleged violations,

drafting template ordinance language, drafting template citation language, "citation

processing," citation mailing, "adjudication services," payment processing, collections,

process serving, public outreach, and training. *See*

http://www.redflex.com/index.php/en/solutions (last visited October 12, 2014).

34.    Redflex also worked for St. Peters by providing "customer service" to those

accused of violating the Traffic Code including, upon information and belief, legal advice,

collecting fines, among other things as discovery may reveal.

35.    The 2006 Ordinance provided, *inter alia*, "[i]n no case shall points be assessed

against any person, pursuant to Section 302.302, RSMo, for a conviction of a violation of the

City Traffic Code detected through the [2006 Ordinance]."  For the purpose of discouraging

the Accused from contesting a ticket, St. Peters intentionally exempted itself, without State

authority, from the requirement mandating that each red light violation be assessed two

points on the driver's license.  Through this conduct, Defendants ensured that alleged

violators would be discouraged from contesting the tickets, thus enabling Defendants to

squeeze maximum revenue from Missouri Citizens who would otherwise seek to dispute that

they engaged in the conduct alleged by Defendants.

### *Defendants Furthered Their Scheme By Mailing Deceptive "Notices Of Violation" To Accused Citizens.*

36.    Defendants sent accused violators a "Notice of Traffic Violation" instead of

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

issuing "citations" for perceived violations of the 2006 Ordinance ("Notice").

37.     The Defendants' "Notice of Traffic Violation" was written in a manner drastically different than the Missouri Uniform Citation format or other citations believed to be used within the City of St. Peters or the State of Missouri.

38.     The Defendants' "Notice of Traffic Violation" pursuant to the 2006 Ordinance did not include the name or signature of any police officer that had reviewed available evidence or made a determination that probable cause existed for the "Notice of Traffic Violation." This is because, upon information and belief, police officers did not review any/all "Notice[s] of Traffic Violation[s]" pursuant to the 2006 Ordinance.

39.     These "Notice[s] of Traffic Violation[s]" prominently included the text "Notice of Traffic Violation" printed in bold text on the outside of the mailing and visible to anyone that saw the envelope—whether it was the accused violator or some other third person.

40.     The form of Defendants' "Notice of Traffic Violation" was written in manner to give recipients such as Plaintiffs and Class false the impression that they had already been found guilty of a violation of the law, that they did not have an option to challenge the supposed violation unless they had sold their car or their car had been stolen, and that they had no other choice but to pay a $110.00 fine.

41.     Importantly, however, the "Notice[s] of Violation[s]" issued pursuant to the 2006 Ordinance included neither the name nor badge number of any police officer who had reviewed available evidence regarding whether or not any probable cause existed to support the issuance of a citation against accused citizens such as Plaintiff Thompson or the Class.

42.     No Missouri police officer is authorized to unilaterally convict or give the impression that s/he can unilaterally convict an accused such as Plaintiff Thompson and

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

Subclass 1.  Nor is any Missouri police officer unilaterally authorized to issue a "Notice of Traffic Violation" seeking to collect a fine from an accused prior to conviction.

43.     Upon information and belief, police officers did not review some (or perhaps any) "Notice[s] of Traffic Violation[s]" issued pursuant to the 2006 Ordinance.

44.     To wit, the "Notice[s] of Traffic Violation[s]" issued pursuant to the 2006 Ordinance failed to instruct Plaintiff Thompson or Subclass 1 where or how evidence of the purported violation could be obtained for their review.

45.     The outside of Defendants' "Notice of Traffic Violation," which was visible to third parties during the mailing/delivery process, plainly included both the names of Plaintiffs and Class as well as the text "Notice of Traffic Violation," which constituted publication to the public of false notice that accused violators such as Plaintiff Thompson and the Class had already been convicted of wrongdoing when, in fact, they had not.

46.     If accused violators of the 2006 Ordinance such as Plaintiff Thompson did not pay the "Notice of Traffic Violation" sent to them by Defendants, warrants would be issued for their arrest, and Defendants would arrest them and force them to pay an increased amount.

47.     While the 2006 Ordinance purports to allow for prosecution of a violation of the St. Peters Traffic Code Ordinance based upon footage obtained from a red light camera, the procedures and presumptions applicable to such proceedings are inexplicably different from other past and present prosecutions of alleged Traffic Code violations.  Specifically:

    a.     The 2006 Ordinance effectively created a presumption of guilt based purely upon ownership of the vehicle in question, without any showing that the accused was actually operating the vehicle at the time;

    b.     The 2006 Ordinance and the "Notice of Violation" in the form received by Plaintiff Thompson and Class gave the false impression to accused citizens of the creation a presumption of guilt based purely upon ownership of the

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

vehicle in question, without any showing that the accused was actually operating the vehicle at the time;

c.    The 2006 Ordinance effectively created a presumption that the registered owner of the vehicle was operating it at the time, essentially shifting the burden upon the accused;

d.    The 2006 Ordinance and the "Notice of Violation" in the form of that received by Plaintiff Thompson and Class gave the false impression to accused citizens that a presumption exists that the registered owner of the vehicle was operating it at the time, essentially shifting the burden upon the accused;

e.    The 2006 Ordinance explicitly states that "In no case shall points be assessed against any person, pursuant to Section 302.302, RSMo., for a conviction of a violation of the City Traffic Code detected through the automated red light enforcement system;"

f.    As a matter of practice and procedure, no points were assessed by Defendants under the 2006 Ordinance against accused citizens who plead guilty to and paid their "Notice[s] of Violation[s]", and contrary to MO. REV. STAT. 302.302, Defendants did not advise the Department of Revenue such convictions or guilty pleas; and

g.    The "Notice of Violation" issued pursuant to the 2006 Ordinance in the form received by Plaintiff Thompson and Subclass 1 gave the false impression to accused citizens that they had already been deemed guilty by the time they received the "Notice of Violation," that they essentially lacked the ability to contest the purported "Violations," that they could not review or challenge any supposed evidence of the purported "Violations," and that—unless they sold their vehicle or had it stolen from them—their only choice was to pay the $110 fine to Defendants.

48.    As written, the 2006 Ordinance did not comport with Missouri statute or the Missouri Constitution. *See City of St. Peters v. Roeder*, No. ED 100701, 2014 WL 2468832 (Mo. Ct. App. June 3, 2014); *Edwards v. City of Ellisville*, 426 S.W.3d 644 (Mo. Ct. App. 2013); *Damon v. City of Kansas City,* No. 75363, Feb. 26, 2014 Order (Mo. App.  W.D. 2013).

49.    As applied by the Defendants, the 2006 Ordinance violated Missouri statute and

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

the Missouri Constitution.

50.     Because the 2006 Ordinance contravenes Missouri law, Defendants have violated the rights of Plaintiff Thompson and the Class (specifically Subclass 1) and were unjustly enriched when Defendants enforced the 2006 Ordinance.

### *Defendants Acted to Perpetuate Their Scheme During 2013 Even After The Illegality Of The Scheme Was Exposed.*

51.     At some point prior to November 2013 – and perhaps even before 2006 – Defendants knew or suspected that the ordinance and citation language used in the Redflex Program conflicted with Missouri and/or federal law.

52.     On or about October 13, 2013, St. Charles County Circuit Judge Ted House granted a motion to dismiss filed by an alleged ordinance violator. The Trial Court held that failure to stop at a red light is "by any definition a 'moving violation,'" and held that "[t]he St. Peters ordinance therefore expressly conflicts with state law" in that the Ordinance provided that no points shall be assessed to violators.  *See Roeder*, No. ED 100701, 2014 WL 2468832.

53.     Less than a month after the decision was issued by the Honorable Judge House, the St. Peters Board of Alderman met in a special session on November 7, 2013.  During this special session Defendants altered the Redflex Program in a misguided attempt to save their revenue-generating scheme by enacting the "Automated Photo Enforcement of Traffic Regulations" Ordinance, Section 335.097, Ord. No. 6014 §1, 11-7-2013. (the "2013 Ordinance"; the 2006 Ordinance and 2013 Ordinance may be referred to collectively as the "Ordinances"). Unfortunately, these alterations did not bring the Redflex Program into compliance; and "citations" issued by Defendants after November 2013 also conflicted with Missouri law as well as Plaintiff McCabe's and the Class's (specifically, Subclass 2) rights.

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

54.     The most obvious difference between the 2006 Ordinance and 2013 Ordinance is that the 2013 Ordinance did not include the text ("[i]n no case shall points be assessed against any person, pursuant to Section 302.302, RSMo, for a conviction of a violation of the City Traffic Code detected through the [2006 Ordinance]") that conflicted with the mandate of MO. REV. STAT. 302.302.1(1).

### *Defendants Continued To Send Deceptive "Notices Of Violation" To Accused Citizens In Connection With The 2013 Ordinance.*

55.     Any individuals who were issued Violations pursuant to the 2013 Ordinance were subject to having points assessed to their driving records once payments were received by Defendants.

56.     No formal plea of guilty (or even informal declaration of guilt) was required by Defendants as a prerequisite for the assessment of points to a violator's driving record.

57.     Despite the fact that the Reflex Program purported to subject violators to having points assessed to their driving record under the 2013 Ordinance, the "Notices of Violation" issued pursuant to the 2013 Ordinance contained no text informing the accuseds such as Plaintiff McCabe and Class that by mailing in their money they would be subject to points being assessed to their driving record.

58.     The *only* mention of reporting contained in the "Notice[s] of Violation[s]" issued pursuant to the 2013 Ordinance was contained within an "Instructions Page" attached with the violation that stated "No record of this violation will be sent to your insurance company or to the Department of Revenue."

59.     Indeed, not only did the Notices of Violations issued pursuant to the 2013 Ordinance fail to give recipients notice that they could be subject to an assessment of points,

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

but these Notices deceived recipients to their detriment regarding the affect that uncontested alleged violations would have on the recipients' rights.

60.    Upon information and belief, any reference to the assessment of points to a violators driving record was intentionally or negligently omitted in hopes that violators would continue to pay the citations rather than go through the "hassle" of contesting them.

61.    "Notice[s] of Violation[s]" issued pursuant to the 2013 Ordinance also purported to include the name and badge number of a police officer that supposedly had reviewed available evidence and made a determination that probable cause existed for issuing a citation.

62.    No Missouri police officer is authorized to convict an accused such as Plaintiff McCabe and Subclass 2 or issue a "Notice of Traffic Violation" seeking to collect a fine for an offense of which an accused is convicted.

63.    Upon information and belief, police officers did not review any/all "Notice[s] of Traffic Violation[s]" pursuant to the 2013 Ordinance.

64.    Upon information and belief, there were few, if any, safeguards in place to ensure that those who were issued violations were in fact the actual driver.

65.    The photographs that are used in an attempt to identify the driver of the vehicle that is the subject of the violation are unclear, blurred, and imprecise which therefore makes it difficult or impossible to ascertain the identity of the actual driver with any degree of certainty.

66.    Before these wrongfully-issued citations would be dismissed, these individuals were told that it would be necessary for them to "rat out" the person who was driving which often effectively meant informing on their family members.

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

67.     The differences between the 2006 Ordinance and the 2013 Ordinance, as well as the respective Notices of Violations issued thereunder, serve as admissions by the Defendants that the 2006 Ordinance and "citations" issued pursuant to the 2006 Ordinance violated the law as well as the rights of Plaintiff Thompson and the Class.

68.     What's more, the difference between the 2006 Ordinance and the 2013 Ordinance, as well as the respective notices of violations issued thereunder, failed to make legal the 2013 Ordinance or the "Notice[s] of Violation[s]" issued by Defendants pursuant to the 2013 Ordinance.  Rather, by continuing the Redflex Program after adoption of the 2013 Ordinance, Defendants knowingly and willfully continued to violate Missouri and infringe upon the rights of Plaintiff McCabe and the Class for the sake of generating revenue.  *See Automobile Club of Missouri v. City of St. Louis*, 334 S.W.2d 355, 363 (Mo. 1960) (holding that ordinances enacted for the purpose of generating revenue are not proper traffic ordinances).

69.     While the 2013 Ordinance purports to allow for prosecution of a violation of the St. Peters Traffic Code Ordinance based upon footage obtained from a red light camera, the procedures and presumptions applicable to such proceedings are inexplicably different from other past and present prosecutions of alleged Traffic Code violations.  Specifically:

    a.     The 2013 Ordinance effectively created a presumption of guilt based purely upon ownership of the vehicle in question, without any showing that the accused was actually operating the vehicle at the time;

    b.     The 2013 Ordinance and the "Notice of Violation" in the form received by Plaintiff McCabe and Class gave the false impression to accused citizens of the creation of a presumption of guilt based purely upon ownership of the vehicle in question, without any showing that the accused was actually operating the vehicle at the time;

    c.     The 2013 Ordinance effectively created a presumption that the registered owner of the vehicle was operating it at the time, essentially shifting the burden upon the accused;

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

    d.    The 2013 Ordinance and the "Notice of Violation" in the form of that received by Plaintiff Thompson and Class gave the false impression to accused citizens that a presumption exists that the registered owner of the vehicle was operating it at the time, essentially shifting the burden upon the accused; and

    e.    The "Notice of Violation" issued pursuant to the 2013 Ordinance in the form received by Plaintiff McCabe and Subclass 2 gave the false impression to accused citizens that they had already been deemed guilty by the time they received the "Notice of Violation," that they essentially lacked the ability to contest the purported "Violations," that they could not review or challenge any supposed evidence of the purported "Violations," and that—unless they sold their vehicle or had it stolen from them—their only choice was to pay the $110 fine to Defendants.

70.    As written, the 2013 Ordinance did not comport with Missouri statute or the Missouri Constitution.

71.    As applied by the Defendants, the 2013 Ordinance violated Missouri statute and the Missouri Constitution.

72.    Because the 2013 Ordinance contravenes Missouri law, Defendants have violated the rights of Plaintiff McCabe and the Class (specifically Subclass 2) and were unjustly enriched when Defendants enforced the 2013 Ordinance.

*__Aside from Violating Plaintiffs' Rights As Alleged Above, Defendants Scheme Illegally Allows A For-Profit Corporation To Usurp The Police Power Of St. Peters For The Purpose of Generating Revenue Rather Than Protecting the Public.__*

73.    Around 2006, St. Peters, with assistance from Redflex, enacted the Ordinance establishing the installment of a Camera system primarily designed to extract money from vehicle owners; a system operated by Redflex, which – upon information and belief – receives a substantial percentage of each fine paid.  According to the Federal Highway Administration, "where a private contractor is responsible for the processing of citations, compensation based

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

on the number of citations issued should be avoided." Such contingency agreements are condemned in criminal law because by their very nature they tend to invite corruption and undermine the fair and impartial administration of justice.

74.     The Redflex Program has not been approved or sanctioned by the State of Missouri.  The Missouri Legislature has not created enabling legislation for the use of red light cameras.

75.     St. Peters' red light camera Ordinances are void as a matter of law because they conflict with and are contrary to Missouri state law governing traffic regulations. *See City of Springfield v. Belt*, 307 S.W.3d 649 (Mo. banc 2010).

76.     The Ordinances establish that vehicle owners shall be prosecuted for violations of photo enforced traffic signals, unless an owner can prove innocence by evidencing under oath that he or she was not the driver and naming who was.  As such, the Ordinances create an unlawful regulation and jettison the state law requirement that "the <u>driver</u> of any vehicle shall obey the instructions of any official traffic-control device" (MO. REV. STAT. § 304.271.1) and "whenever traffic is controlled by traffic control signals exhibiting different colored lights… said lights shall indicate and apply <u>to drivers of vehicles</u>…" (MO. REV. STAT. § 304.281.1) (emphasis added).

77.     Because the Ordinances establish requirements in conflict with and contrary to a state law with respect to a matter on which the state law is intended to be controlling, the Ordinances are void as a matter of law.  *E.g., Damon,* 419 S.W.3d 162; *see also Kenney v. Hoerr*, 324 Mo. 368, 373 (Mo. 1929). "No ordinance shall be valid which contains provisions contrary to or in conflict with [Chapter 304 of the Missouri Revised Statutes]." MO. REV. STAT. § 304.120.1.3.

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

78.     The Ordinances are unconstitutional because they are criminal in nature and create a rebuttable presumption that shifts the burden of proof onto the accused. The City must prove beyond a reasonable doubt that the owner of the vehicle was driving at the time of the offense.

79.     In addition to the conflict between Missouri state law and the Ordinances, St Peters did not have authority to enact the Ordinances because, among other reasons, the Ordinance were enacted solely to generate revenue under the guise of public safety.

80.     Indeed, by circumventing Missouri law governing the assessment of points, by enacting and enforcing a presumption of guilt, and by limiting the defenses available to the accused, Defendants have created an unlawful revenue-generating scheme whereby defending oneself against a violation of the Ordinances becomes impractical if not seemingly impossible, not to mention financially and legally burdensome when weighed against the option of simply paying the fine.

81.     In bringing this class action, Plaintiffs seek to expose what they and other Missouri citizens believe is an unscrupulous business venture between an out-of-state for-profit corporation and a municipal government seeking new ways to fill city coffers. Without authority from the People of Missouri or their representatives in the Missouri Legislature, the Defendants have devised a red light camera program in direct conflict with Missouri state law, for one true purpose: to make money.

82.     Because the Ordinances are actually for the purpose of generating revenue, it is invalid under Missouri law.

83.     The Ordinances are void, unlawful, and unconstitutional under Missouri law, and invalid as a matter of public policy, for several reasons including, but not limited to:

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

a.    The Ordinances establish liability based solely on ownership and eliminates the legal requirement that only the driver shall be liable; therefore, the Ordinance is contrary to and in conflict with Missouri state law (Mo. Rev. Stat. §§ 304.271.1 and 304.281.1) governing traffic regulations and rules of the road related to traffic control signals.

b.    Defendants have deliberately circumvented Missouri state laws intended to keep dangerous drivers off the road (Mo. Rev. Stat. §§ 302.225, 302.302, 302.010(12)), at the peril of Missouri citizens. Indeed, without a rational basis, Defendants have unlawfully and illogically misclassified a red light violation (which is a moving violation under Missouri law, § 302.010(12)) as a "non-moving infraction" to avoid the Missouri drivers license point-system, which St. Peters has done for the intended purpose of decreasing the number of contested red light camera cases and increasing the number of camera tickets paid. Thus, the Ordinances, while disguised and marketed to the public as a public safety program, does not actually promote public safety because St. Peters has converted misdemeanor moving violations into non-moving infractions to avoid reporting guilty pleas and convictions, which means that no driver will ever be assessed points and removed from the road for what St. Peters calls public safety violations.  If the primary goal of the Cameras is to enforce public safety, then drivers should be assessed points on their licenses like other moving violations, which, in fact, is required under Missouri law.

c.    **Red light cameras do not increase public safety**, as proven by a comprehensive study conducted by the City of Kansas City, Missouri Police Department, which showed the number of "**injury wrecks, rear-end wrecks and overall wrecks all increased**" after Defendants installed the Cameras.[1]  Kansas City's study comes as no

---

[1] On Jan 23, 2012, the City of Kansas City, Missouri released its two year study that included the analysis of more than 2,500 wrecks  after the cameras were installed. See http://fox4St. Peters.com/2012/01/24/study-red-light-cameras-do-not- increase-safety-at-intersections/ ("The KCPD study agrees with a recent study out of Chicago which  showed that the cameras don't improve safety, but are instead an easy source of revenue."). *See*  http://www.kansascity.com/2012/01/23/3387905/St. Peters-police-study-suggests-red-light.html#storylink=cpy;  Barbara Langland-Orban, et al., *Red Light Running Cameras*…. 5 Fla. Pub. Health Rev. 1 (2008).  In  fact, dozens of independent studies have repeatedly shown that red light cameras actually <u>increase</u>   accidents. *See e.g.,* http://www.thenewspaper.com/news/04/430.asp and http://www.motorists.org/red-light-cameras/studies (compiling studies showing cameras actually increase crashes and injuries); *see also* http://www.newsmagazinenetwork.com/2014052047718/st-charles-county-votes-to-put-red-light-camera-ban-on-november-ballot-2/ (last visited September 27, 2014).

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

surprise, as "**comprehensive studies conclude <u>cameras actually increase crashes and injuries</u>, providing a safety argument not to install them.... public policy should avoid conflicts of interest that enhance revenues for government and private interests at the risk of public safety**."  Moreover, red light cameras effectively do nothing to reduce accidents or curtail dangerous driving because, among other reasons, Cameras cannot stop drunk or distracted drivers.  The primary cause of red light accidents is driver inattention.  The prevalence of these facts has even been publically admitted by at least one of Kansas City's elected officials, stating there is "evidence that show they cause more rear-end accidents. There has not been a definitive study done, for me, to show it increases safety on the road."[2]

d.    The Ordinances violate Missouri Constitution in that it deprives Plaintiffs and Class of due process of law, and compels Plaintiffs and Class to testify in order to prove their innocence. The Ordinances create a *presumption of guilt*, which is unconstitutional. Vehicle owners (the "Accused") are presumed guilty of violating the Ordinances if a red light camera takes a photo of the Accused's vehicle in an intersection when a light is red. By shifting the burden of proof onto the vehicle owner to prove his or her innocence, the Ordinances violate the privilege against self-incrimination, as the vehicle owner is compelled to testify on his or her own behalf. The United State Supreme Court has continuously upheld the sanctity of this fundamental right finding it "while sometimes a shelter to the guilty, is often a protection to the innocent." *Murphy v. Waterfront Comm'n*, 378 U.S. 52, 55 (1954).

e.    The Ordinances contain a rebuttable presumption that the owner of a vehicle (or owners if the vehicle is jointly owned) was or were driving at the time of the violation.  Because the Ordinances are criminal in nature, the rebuttable presumption and the Ordinances themselves are unconstitutional.  Defendants fail to account for what both readily available statistics and common sense demonstrate: it is in fact wholly arbitrary to presume the owner was the driver at the time of the violation, especially when a vehicle has multiple owners or when multiple people share a vehicle (e.g., licensed teenagers driving the family car).

f.    The Cameras replace live police officers – whose purpose is to enforce the laws and who can combat all crimes not just red light violations – with automatons capable of only one purpose: photographing vehicles in order to funnel revenue to Defendants.

---

[2] *City: Red-Light Cameras Not As Profitable As Hoped*, supra.

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

Even more disturbing, in order to properly function in accordance with the notions of probable cause, the Redflex Program implemented by Defendants requires pulling police officers off the street and placing them in front of a computer to review red light camera images, see the 2006 and 2013 Ordinances, which obviously results in a clear detriment to the people of St. Peters as there are fewer police officers on the street to fight crime.  Without a doubt, these Cameras cannot stop a drunk driver from running a red light at the first intersection, running a red light at the next intersection, and then killing someone in the third intersection – while police officers can.  These Cameras cannot keep our communities safe from crime – while police officers can.  In fact, the St. Louis Police Officers' Association overwhelmingly voted in opposition to St. Louis' red light camera program stating: "there is a lot more to a traffic stop than just issuing a ticket - - there's also checking to make sure the driver has insurance and seeing if their license is up to date . . . we believe that traffic tickets should be made against individuals, not their vehicles."[3]  The Police Officer's Association also opposed the use of red light cameras stating it would limit police officers' interactions with the public.  *Id.*

g.    In addition to issuing points on licenses to remove dangerous drivers from the road, safer roads can be obtained with better traffic/city engineering, such as: i) adding or increasing all-red clearance intervals (a brief period where the lights in all directions are red) after the yellow-light phase.  In February of 2011, in Arnold, Missouri, MoDOT changed the length of time all signals at an intersection appear red, giving intersections more time to clear all cars before changing lights; ii) increase the yellow-light time.  MoDOT also increased yellow- light signal times in Arnold.  As a result of these two initiatives, the number of red-light citations has plummeted[4]; iii) make traffic lights more visible; and iv) redesign intersections to make them safer, such as converting intersections into roundabouts; in fact, implementing "roundabouts in place of traffic signals would have profound cumulative effects" on vehicular crashes, injuries, traffic congestion, and fuel consumption.[5]

---

[3] *St. Louis Police Officers Association Votes Against Red-Light Cameras*, WWW.DAILYRFT.COM, at http://blogs.riverfronttimes.com/dailyrft/2009/03/st_louis_police_officers_association_votes_against_red-_light_cameras.php.

[4] http://blogs.riverfronttimes.com/dailyrft/2011/06/redlight_camera_citation_yellow_lights_arnold.php**.**

[5] The Federal Highway Administration has found that compared to intersections with traffic signals roundabouts reduce fatalities by more than 90%, with a reduction in injury crashes of 76% and a reduction in all crashes of 35%.  See http://safety.fhwa.dot.gov/intersection/roundabouts/fhwasa08006/  and see http://www.iihs.org/externaldata/srdata/docs/sr4511.pdf (stating "roundabouts essentially  eliminate

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

> *However, these methods do not generate streams of revenue for*
> *cities or for out-of-state corporations like Redflex.*

84.    Plaintiffs and Class contend that Redflex's actions in collusion with St. Peters are

unlawful for several reasons, including but not limited to the following:

   a.   Redflex contracted with St. Peters for the purpose of financial gain with

        knowledge that the Ordinances violated Missouri law;

   b.   Redflex acted in concert with St. Peters to draft, promulgate,

        and enforce the Ordinances;

   c.   Redflex manipulates and/or conceals studies and statistics that show

        Cameras are not safe and/or are not effective; and

   d.   Redflex, with knowledge that the Ordinances violate Missouri law, works

        with St. Peters to collect monies through the enforcement of the

        Ordinances, which has unjustly enriched Redflex and St. Peters.

85.    Plaintiffs further allege that St. Peters contracted away, surrendered, and

impermissibly delegated its governmental functions to Redflex including, but not limited to,

the following ways:

   a.   Redflex plays an integral role in prosecuting violations, processing

        citations, and collecting fines;

---

the potential for the most dangerous types of crashes – right angle, left turn, and head-on  collisions –
because traffic moves in a single direction.  Compared with traffic signals, they also reduce  the
likelihood of rear-end crashes because no one speeds up to make a yellow or green light or abruptly
stops because a signal turned red" and also finding roundabouts save cities money as they're cheaper
to build and maintain than signalized intersections, and don't require electricity).  In another study on
roundabouts, it was found that "widespread nationwide construction of roundabouts in place of traffic
signals would have profound cumulative effects on vehicle delay and fuel consumption…. If just
10% of  signalized intersections were converted to roundabouts… annual fuel consumption would be
reduced by  more than 500 million gallons and annual vehicle delays would be reduced by about 800
million hours."  Available at http://www.iihs.org/research/paper_pdfs/mf_1848.pdf.

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

  b.   Redflex installs, maintains and operates the camera system;

  c.   Redflex encourages guilty pleas and payment of the fine by the Accused.

86.   The Notice of Violation also instructs the Accused to call a toll-free "Customer Service" at 877-***-2338 Monday through Friday between 7:00 a.m. and 5:00 p.m. Mountain Standard Time.

87.   The "Customer Service" line whose information is provided to the Accused is believed to be operated by Redflex with Redflex employees answering the phones.

88.   As a private, for-profit, non-governmental entity, Redflex should not be the point of contact for the Accused's questions about a red light camera violation.  This raises substantial concern as to the nature of the information or advice that Redflex is directly providing to the Accused. At the very least, it smacks of impropriety and poses a considerable conflict of interest given that Redflex receives a portion of each camera ticket that is paid.

89.   In addition, upon information and belief, Redflex is the first party to receive and review images of potential red light camera violations before sending these images to St. Peters police officers, who then issue a citation in the form of a Notice of Violation ("Citation"). However, upon information and belief, there are times when St. Peters' police officers do not review these images to determine whether a violation has actually occurred, which results in employees of Redflex, not officers of the law, determining whether a violation occurred and then issuing a Citation.

90.   Redflex and/or St. Peters charge and retain "convenience fee" of about $1.50, either when the Accused pays via Redflex's privately-operated website (www.photonotice.com) or by way of a toll-free "customer service" number.  There is no

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

statutory authorization for an assessment of a fee or court cost for the $1.50 convenience fee. The rule in criminal as in civil cases is that the recovery and allowance of costs rests entirely on statutory authority and that no right to or liability for costs exists in the absence of statutory authorization. Such statutes are penal in their nature and are to be strictly construed.

91.   Redflex or its paid employees (who were not attorneys licensed in the state of Missouri) acted as pseudo-law enforcement officers in making the initial determination that the Ordinances had been violated; acted as prosecutors in causing charges to be filed or sending Notices of Violation; acted as pseudo-judges in considering and "ruling" on affidavits and/or other submissions from owners who allege they were not the driver at the time of the offense, as well as in accepting the plea of guilty and receiving the fines.

92.   The penalty for violating the Ordinances was arbitrarily set and imposed. The fine was last set at $110.00.  Defendants set the cost of the fine sufficiently high in order to build in a cushion allowing for Redflex to be paid its contractually agreed-upon cut of each fine, while still leaving St. Peters its contractually agreed-upon revenue stream.

93.   Defendants contracted with each other to collect monies from Missouri citizens by designing and enforcing unlawful Ordinances, despite having knowledge that the Ordinances were likely void, invalid, and/or unconstitutional.

94.   Prior to enactment of the Ordinances, and at all material times thereafter, Redflex and/or St. Peters had reason to believe that promulgation and enforcement of the Ordinances was unlawful and void.

95.   In particular, Redflex and/or St. Peters had actual knowledge that the red light camera program would likely violate Missouri law including circumvention of the Missouri point system mandated by MO. REV. STAT. § 302.302.1.

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

96.   St. Peters considers violations of the Ordinances to be criminal in nature, as expressed in the Notice of Violation sent to the Accused.

97.   Under Missouri law, violations of municipal ordinances are generally quasi-criminal in nature.  Defendants' Ordinances are criminal in nature and/or effect.

98.   The State of Missouri specifically recognizes that the violation of a traffic signal is criminal in nature or effect.  MO. REV. STAT. §304.281 defines a traffic violation as a class C misdemeanor and MO. REV. STAT. §558.011 states that such class C misdemeanors are punishable by a term not to exceed fifteen days imprisonment.

99.   Misdemeanors of all classes are governed by the Missouri Rules of Criminal Procedure under which citizens are afforded all procedural protections available in Missouri's criminal tribunals. *See* MO. REV. STAT. §543.220, and MO. R. CRIM. P. 19.01.

100.   The Ordinances, despite Defendants' attempts to make them appear civil, are criminal in nature because, *inter alia*, the Ordinances seek to regulate and prosecute violations predicated solely on failure to obey traffic signals, violations that are criminal under Missouri law, and/or are criminal in effect because the Ordinances and/or the Defendants to this action authorize arrest as a mechanism for enforcing the Ordinances.

101. St. Peters is believed to have threatened further legal action against any Accused who does not pay the penalty, does not submit a sworn statement, or submits a sworn statement that the prosecuting authority subsequently determines is insufficient.

102. Since this class action concerns an alleged violation of a criminal or quasi-criminal municipal ordinance and the alleged criminal violation of a traffic-control device, a Missouri court must apply the criminal standard of proof; therefore, St. Peters is obligated by law to prove the guilt of Plaintiffs and Class beyond a reasonable doubt.   It cannot.

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

103. Because municipal ordinances are quasi-criminal in nature, the Ordinances may not shift the burden of persuasion on an element of an offense to the Accused.  The burden of proving the guilt of the Accused on each element beyond a reasonable doubt must rest with St. Peters.

104. The fact that the Cameras are not able to identify the actual driver of the vehicle is certainly reasonable doubt that Plaintiffs and Class, as vehicle owners, were the drivers at the time of the violation.

105. Defendants' red light camera program involves placing Cameras at certain intersections.  The Cameras are used simply to take photos and video images of purported red light violations, but cannot necessarily identify the actual driver as required under Missouri law.  The Cameras do, however, identify supposed owners of the vehicles. The Cameras are by design particularly equipped to identify license plate numbers rather than faces or names; and St. Peters' prosecution of Plaintiffs and Class is not based on proving the Accused was the driver at the time of the offense, as St. Peters has unlawfully established liability based on vehicle ownership. Moreover, the Ordinances contemplate exoneration of a vehicle owner if the owner testifies against the actual driver (which harkens back the McCarthy era of naming names).

106. The Ordinances allow for the prosecution of more than one vehicle owner. Because liability is based on ownership, the Ordinances establish liability for any and all owners, which means two or more owners are held liable for the same violation. However, it is obviously impossible for more than one person to be guilty of running a red light. As such, the Ordinances are also unlawful and unconstitutional because they enable St. Peters to knowingly prosecute innocent people and/or prosecute people without probable cause to

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

believe they were actually driving.

107. The State of Missouri authorizes St. Peters' use of law enforcement officials to police and enforce all lawful rules of the road and traffic regulations. As required by Missouri law, police officers must cite actual drivers of vehicles who violate traffic signals.  Yet, upon information and belief, St. Peters expressly or impliedly instructs and/or suggests that police officers not patrol intersections with Cameras.  This results in police officers avoiding busy and/or dangerous intersections where such officers could detain intoxicated drivers, distracted drivers, dangerous drivers, and enforce a myriad of other laws that would promote public safety, in addition to citing the actual drivers who violate traffic signals.

108. Upon information and belief, the yellow light interval at intersections with red light cameras in the City is, and/or was, improperly short.

109.   Common sense dictates that that Defendants' Camera program is not for the purpose of enforcing "public safety" because, among other reasons:

    a.  Defendants do not prosecute and fail to hold liable the actual driver who violated the traffic signal;

    b.  At least as to the 2006 Ordinance, Defendants misclassified red light moving violations as non-moving infractions to avoid assessing points, which means no driver will be removed from the road for violating public safety;

    c.  St. Peters already has a reliable (and better) system to detect violations of public safety at intersections, i.e., police officers;

    d.  Upon information and belief, St. Peters and Redflex have not installed red light cameras at the most dangerous intersections;

    e.  Upon information and belief, St. Peters instructs or discourages its police officers from patrolling intersections where red light cameras are installed, resulting in decreased safety at those intersections.

    f.  The City failed to investigate and follow traffic engineering guidelines and/or safety regulations in the implementation and enforcement of its

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

camera system.

110.     Several weeks or even months after a violation occurs (in the case of Plaintiff McCabe, over two months after the violation), Redflex and/or St. Peters mails a Notice of Violation to the vehicle owner(s) who become the Accused.

111.     The Notice of Violation also contains a startling and perplexing sworn statement from a St. Peters police officer that "I, KNOWING THAT FALSE STATEMENTS ON THIS FORM ARE PUNISHABLE BY LAW, STATE THAT I HAVE PROBABLE CAUSE TO BELIEVE THAT: [Plaintiff or Class Members] … DID UNLAWFULLY OPERATE/DRIVE [vehicle description] … [and] DID THEN AND THERE COMMIT THE FOLLOWING OFFENSE: 'Did Fail to Stop for a Red Traffic Signal at an Intersection Monitored by an Automated Traffic Control System.'"

112.     Without being able to identify the driver, a police officer cannot have "probable cause" to issue a Notice of Violation to two owners of record when there can only be one driver.  At best, an officer who reviews a alleges violation may have "reasonable suspicion" that one owner or the other committed the offense; however, Defendants know that they cannot issue a Notice of Violation (aka an "Information") without probable cause.

113.     Clearly, a police officer cannot truthfully state that he or she has "probable cause" to believe that either Plaintiff or Class did unlawfully "operate/drive" the photographed vehicle, as there is absolutely no proof that either Plaintiff was behind the wheel.

114.     The Ordinances and Defendants' enforcement thereof violate Missouri Supreme Court Rule 37.

115.     While a careful reader would note that the Notice of Violations included a court

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

date, when such a date was coupled with the assertion on the Notice that "[i]t has been determined that your vehicle has proceeded into an intersection by crossing the stop line when the traffic control signal" was red, the rights of the Plaintiffs and Class were overshadowed in such a manner that it indicated to lay readers, such as Plaintiffs and Class, that the only "defense" to the violation was if an owner's vehicle was sold or stolen.  In other words, Defendants "Notice of Violation" made it appear to Plaintiffs and Class that a conclusive hearing had already occurred and all that remained was that the Accused pay the fine for the "Violation" within the "Notice of Violation."

116.    A city has no power, by municipal ordinance, to create liability from one citizen to another, nor to relieve one citizen from liability by imposing it on another.  A city cannot create by ordinance a scheme that enlarges the common law, statutory duty, or liability of citizens among themselves.

117.    By requiring the Accused to swear under oath and/or penalty of perjury to overcome the Ordinances' presumption of guilt, St. Peters compels the Accused to testify in order to prove his or her innocence without being afforded the constitutional presumption of innocence.

118.    The Ordinances are also unconstitutional because they authorize a taking of property without due process of law by imposing penalties on ownership of a vehicle in an arbitrary, unreasonable, and capricious manner without a fair hearing and without adequate procedural protections.

119.    Unless this Court finds that generating revenue at the expense of safer roads is a valid government purpose, the Ordinances are also unconstitutional because they are not rationally related to any valid government purpose.  There is no rational basis for St. Peters to

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

circumvent a Missouri state law designed to keep dangerous drivers off the road (i.e., MO. REV. STAT. §§ 302.225 and 302.302).  There is also no rational basis for St. Peters to re-classify a red light violation (which is a moving violation under Missouri law, § 302.010) as a "non-moving violation" to avoid the Missouri drivers' license point system, other than to decrease the number of contested red light camera cases and increasing the number of camera tickets paid.

120.    Between around 2006 through 2013, St. Peters illegally and illogically treated violations of the 2006 Ordinance as non-moving infractions through its mandate in the Ordinance that "[i]n no case shall points be assessed against any person" for violations of the Ordinance. Yet, to commit a red light violation a vehicle must be moving through the intersection during a red light.[6]

121.    During or around 2006 through 2013, St. Peters deliberately failed to report pleas or findings of guilt for violation of the Ordinance to the Department of Revenue, thereby circumventing a Missouri law designed to make our roads safer.

122.    For the purpose of discouraging the Accused from contesting a ticket, St. Peters intentionally exempted itself, without State authority, from the requirement mandating that each red light violation be assessed two points on the driver's license.  In this manner, St. Peters and Redflex ensured that they would squeeze maximum revenue from Missouri Citizens.

123.    Plaintiff Thompson and Subclass 1 further state that, pursuant to the alleged Ordinance violation, their payment of $110 was involuntary and not an admission of guilt or

---

[6] The Missouri Supreme Court has stated that red light camera violations are moving violations. *See City  of Springfield v. Belt*, 307 S.W.3d 649 (Mo. banc 2010) (In a unanimous decision voiding

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

liability because they acted under duress as a result of St. Peters' threat to take further legal action against the Accused, including arrest/imprisonment, and/or because it was impracticable to defend themselves.

124. Moreover, the payment of $110 by Plaintiff Thompson and Subclass 1 was not an admission of guilt or liability because pursuant to MSCR 37.57 "no defendant shall either be tried or permitted to enter a plea of guilty unless the defendant is personally present or the judge, defendant, and prosecutor consent to such trial or plea in the defendant's absence."  In addition, the payment of $110 by Plaintiff Thompson and Subclass 1 was not an admission of guilt or liability pursuant to MSCR 37.58(c).

125. Because St. Peters' prosecution of the 2006 Ordinance is void and the prosecution of the Ordinance failed to conform to the Missouri Supreme Court Rules, the 11th Judicial Circuit never acquired jurisdiction; thus, the payments made by Plaintiff Thompson and Subclass 1 were a nullity and Defendants must refund such payments or they will be unjustly enriched.

126. St. Peters' creation and enforcement of the 2006 Ordinance, and Redflex's enticement of St. Peters to contract with them as well as Defendants' installation and operation of the red light cameras, constitutes wrongful conduct.

127. Defendants collected an arbitrary fine in the amount of $110 from Plaintiff Thompson and Subclass 1.

128. Defendants also collected arbitrary fines from Plaintiff McCabe and Subclass 2.

129. Defendants are legally obligated to refund all monies paid pursuant to the Ordinances.

_____

Springfield's  red light program on due process grounds, Supreme Court Justice Wolff proffered that

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

130. Plaintiffs and Class paid the fine under the reasonable but mistaken belief that the Ordinance was valid.

131. Plaintiffs and Class further allege the $110 fine imposed for violating the Ordinances is, in essence, a fee assessed to vehicle owners, not the actual drivers, and such a fee violates Article 10 § 22 of the Missouri Constitution by imposing such fees without a vote of the people.

132. St. Peters and Redflex, through their agreement and/or understanding, created and used the unlawful and void Ordinances for the purpose of extracting monies from Plaintiffs and Class. Defendants acted in furtherance of their agreement on multiple occasions, including but not limited to:

   a.  each installation and operation of Cameras at intersections in the City of St. Peters,

   b.  disregarding data and studies showing Cameras actually increase accidents,

   c.  failing to investigate or study engineering changes/counter-measures at signalized intersections prior to the installation of the Cameras that would have made the intersections safer,

   d.  sending of photographs and images from Redflex to St. Peters,

   e.  mailing "Notices of Violation" to Plaintiffs and Class, and

   f.  other acts committed by Defendants in furtherance of their agreement to extract monies from Plaintiffs and Class by means of the Ordinance and Camera program.

133.   The Ordinance and Defendants' conduct violate the fundamental rights of Plaintiffs and Class; rights that are absolutely guaranteed under the United States and Missouri Constitutions.

---

red light camera  violations are moving violations).

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

134.    Defendants have no sovereign immunity, qualified immunity, or other immunity given the circumstances and constitutional violations alleged in this Petition. Furthermore, to the extent Defendants' conduct is found to be a tort, no immunity applies and Defendants are liable because their conduct constituted a "proprietary function" rather than a "governmental function".  In addition, to the extent Defendants have procured insurance, they have waived sovereign immunity for the amount insured under the policy.

135.    As a direct and proximate result of Defendants' conduct, Plaintiff Thompson and Subclass 1 were injured, while St. Peters and Redflex were unjustly enriched between 2006 and around November 2013.

136.    As a direct and proximate result of Defendants' conduct, Plaintiff McCabe and Subclass 2 were injured, while St. Peters and Redflex were unjustly enriched between around November 2013 and September 1, 2014.

137.    There is a substantial risk that Defendants may again commence their illegal conduct and that Plaintiffs and Class may be prosecuted by Defendants and suffer irreparable harm again in the future if an injunction is not granted.

## CLASS ACTION ALLEGATIONS

138.    This case is brought, and can be properly maintained, as a Class Action represented by Plaintiffs pursuant to Missouri Rule of Civil Procedure 52.08.

139.    Plaintiffs seek to represent a class consisting of all Missouri citizens who received a Notice of Violation pursuant to the 2006 Ordinance (Subclass 1) or who received a Notice of Violation pursuant to the 2013 Ordinances (Subclass 2).

140.    The Class is believed to comprise thousands of Missouri Citizens, the joinder of whom is impracticable.  The members of the Class are so numerous that it is impractical to

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

bring all of them before the Court in this action.

141.    Plaintiffs bring this action on behalf of themselves and the Class against Defendants to recover the amount of the fines paid and to obtain injunctive relief for those class members with outstanding Citations.

142.    Excluded from the defined Class is the judge to whom this case is assigned, Redflex and St. Peters, St. Peters' elected officials and representatives, and all those who validly and timely opt-out of the certified Class.

143.    The amount of damages suffered individually by Plaintiff Thompson and Subclass 1 is so small as to make an individual suit for its recovery economically impracticable and/or unfeasible.

144.    The amount of damages suffered individually by Plaintiff McCabe and Subclass 2 is so small as to make an individual suit for its recovery economically impracticable and/or unfeasible.

145.    Class treatment of the claims asserted herein will provide substantial benefit to both the parties and the court system. A well-defined commonality of interest in the questions of law and fact involved affects Plaintiffs and the proposed Class.

146.    There are common questions of law and fact applicable to the claims asserted on behalf of the Class.  The common questions include, but are not limited to, whether:

       a.  The Ordinance are in conflict with federal and Missouri state laws;

       b.  The Ordinance are void or invalid;

       c.  The Ordinance are unconstitutional on its face and/or as applied;

       d.  Defendants have circumvented or misclassified any Missouri state law;

       e.  St. Peters did not have authority to enact the Ordinances;

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

    f.  St. Peters did not have authority to create a rule of evidence in the Ordinances;

    g.  The Ordinances are unlawful because it creates a presumption of guilt by reason of ownership of the vehicle identified in the Citation and thereby shifts the burden of proof onto the Accused;

    h.  The issuance of Citations, and the prosecution of the Ordinances under the circumstances described in this Complaint, deprive Plaintiffs and Class of due process of law;

    i.  Plaintiff McCabe and Subclass 2 have a right to recover any fines paid; and

    j.  Plaintiff Thompson and Subclass 1 have a right to recover any fines paid.

147.    The claims of Plaintiff Thompson are typical of the claims of Subclass 1.

148.    The claims of Plaintiff McCabe are typical of the claims of Subclass 2.

149.    Plaintiffs will fairly and adequately represent and protect the interests of the proposed Class.  Plaintiffs do not have any interest antagonistic to those of the Class. Plaintiffs have retained competent and experienced counsel in the prosecution of this type of litigation.

150.    Defendants have acted or refused to act on grounds that apply generally to the Class as discussed herein, such that final injunctive relief or corresponding declaratory relief is appropriate for the Class as a whole.

151.    The questions of law and fact common to the members of the Class overwhelmingly predominate over any questions affecting only individual members of the Class.

152.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because members of the Class number in the thousands and individual joinder is impracticable.  The expenses and burden of individual litigation would make it impracticable or impossible for proposed members of the Class to prosecute their

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

claims individually. Trial of Plaintiffs' claims is manageable.

153.    Unless a class is certified, Defendants will retain monies received as a result of its unlawful conduct and scheme to collect monies from Plaintiffs and Class. Unless a class-wide injunction is issued, Defendants could continue to violate Missouri law resulting in harm to Missouri citizens.

154.    For these reasons, this case is maintainable as a class action pursuant to Missouri Rule of Civil Procedure 52.08.

## COUNT I: DECLARATORY JUDGMENT

155. Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Amended Class Action Petition as if fully set forth herein.

156.    An actual and genuine justifiable controversy exists, between Defendants on the one hand and Plaintiffs and Class on the other, concerning the validity of the Ordinances, the rights of Plaintiffs and Class, and the legality of Defendants' conduct as described in this Petition, which has resulted, or imminently will result, in depriving Plaintiffs and Class of their property, their rights and their liberties.

157.    Pursuant to Mo. Rev. Stat. § 527.010 *et seq* and Missouri Rule of Civil Procedure 87, Plaintiffs request declaratory judgment concerning the following:

    a.  Whether the Ordinance(s) is void as a matter of law because it conflicts with and/or is contrary to Missouri state law (Mo. Rev. Stat. §§ 304.271.1 and/or 304.281.1);

    b.  Whether St. Peters had authority to enact the Ordinance(s);

    c.  Whether Defendant(s) have circumvented Missouri state laws mandating the assessment of points for moving violations (MO. REV. STAT. §§ 302.225, 302.302, 302.010(12)).

    d.  Whether Defendant(s) have authority to reclassify violations of steady red

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

light traffic signals (a moving violation under Missouri law) as non-moving infractions;

e.   Whether it is lawful for St. Peters to create a rule of evidence in the Ordinance(s) by establishing liability based on vehicle ownership;

f.   Whether Defendant(s) can lawfully prosecute vehicle owners if the owner was not driving at the time of the violation;

g.   Whether the Ordinance(s) and/or Defendant(s) conduct violates Article I § 19 of the Missouri Constitution in that the Accused are compelled to testify in order to prove their innocence;

h.   Whether the Ordinance(s) and/or Defendant(s) conduct violates the Fifth Amendment of the United States Constitution in that the Accused are compelled to testify in order to prove their innocence;

i.   Whether the Ordinance(s) violates Article I § 10 of the Missouri Constitution in that the Ordinance(s) deprives Plaintiffs and Class of due process of law;

j.   Whether the Ordinance(s) violates the Fifth or Fourteenth Amendments of the United States Constitution in that the Ordinance(s) deprives Plaintiffs and Class of due process of law;

k.   Whether the Ordinance(s) is invalid because it is for the purpose of generating revenue;

l.   Whether the Ordinance(s) and/or Defendants' conduct violates public policy;

m.   Whether Plaintiff Thompson and Subclass 1 are entitled to recover the payments made pursuant to the void and unlawful Ordinance(s), *Damon v. City of Kansas City,* 419 S.W.3d 162 (Mo. App.  W.D. 2013); *see Kenney v. Hoerr,* 324 Mo. 368, 373 (Mo. 1929) ("No ordinance shall be valid which contains provisions contrary to or in conflict with [Chapter 304 of the Missouri Revised Statutes]." Mo. Rev. Stat. § 304.120.1.3.); and

n.   Whether Plaintiff McCabe and Subclass 2 are entitled to recover the payments made pursuant to the Ordinance(s) if the Ordinance(s) is found void or unlawful.

158. Despite Defendants knowledge of this controversy, Plaintiffs and Class have

received no refunds of the fines paid, and Plaintiffs and Class are aware of no change in the

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

Ordinances.

159. As such, an actual and genuine controversy exists between the Parties, and this Court is vested with the power to declare the rights and liabilities of the Parties with regard to the Ordinances and/or Missouri laws.

160. Because the Ordinances and St. Peters prohibit the Accused from asserting certain legal and/or factual defenses, as described in this Petition, there exists no alternative remedy for Plaintiffs and Class to redress their injuries and/or rights.

161. Pursuant to MO. REV. STAT. § 527.010 *et seq* and Missouri Rule of Civil Procedure 87, the Circuit Courts of this State, not St. Peters' municipal court, have the power to declare rights affected by statutes and municipal ordinances. As a result, there exists no alternative remedy for Plaintiffs and Class to redress their injuries and/or rights other than in this Court.

WHEREFORE, Plaintiffs and Class respectfully request this Court enter a Declaratory Judgment declaring the Ordinances void, invalid and/or unconstitutional, and further order that all pending red light camera Citations be dismissed and that Defendants disgorge all monies unjustly collected under the Ordinances, as well as all relief sought in the Request for Relief set forth at the end of this Petition and any other relief this Court deems just and proper.

**COUNT II: UNJUST ENRICHMENT AGAINST DEFENDANT ST. PETERS**

162. Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Amended Class Action Petition as if fully set forth herein.

163. For the reasons set forth in this Petition, the Ordinances are void, invalid, and/or unconstitutional.

164. Defendant St. Peters knew or had reason to know that its Ordinances were void, invalid, and/or unconstitutional.

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

165. Defendant St. Peters knew or had reason to know that collecting fines under the Ordinances were illegal and inequitable.

166. As such, it is unlawful, inequitable, and unjust for St. Peters to issue Citations, prosecute vehicle owners, collect fines, and/or otherwise subject Plaintiffs and Class to further legal action, including arrest and imprisonment, pursuant to the Ordinances.

167. Plaintiffs and Class have conferred a benefit on Defendant by making payments to Defendant St. Peters pursuant to the unlawful and void Ordinances.

168. Defendants St. Peters has accepted and retained monies paid by Plaintiffs and Class in the form of fines, costs, and fees pursuant to the unlawful and void Ordinances.

169. Defendant St. Peters acknowledged receipt of the unjust benefit conferred by Plaintiffs and Class by treating the payment of the fine as satisfaction of the penalty for violating the Ordinance and by ceasing to pursue further legal action against Plaintiffs and Class.

170. Because the Ordinances are unlawful or void, it would be unjust for Defendant St. Peters to retain any benefit in the form of fines paid by Plaintiffs and Class.

171. Defendant St. Peters possesses monies which rightfully belong to Plaintiffs and Class because these monies were collected by means of an unlawful or void Ordinances, and which in good conscience ought to be paid back to Plaintiffs and Class.

172. As such, it is unjust, inequitable, and/or unconscionable for Defendant St. Peters to retain monies paid by Plaintiffs and Class pursuant to the Ordinances.

173. As a result of the Ordinances and Defendant St. Peters' conduct, St. Peters has been unjustly enriched at the expense of Plaintiffs and Class in excess of $25,000.

174. Plaintiffs and Class claim all legal and equitable remedies, including restitution,

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

which they are entitled by law to recover from St. Peters for the injuries and losses set forth herein.

175. The conduct of Defendant was malicious, corrupt, and either intentional or reckless to a degree sufficient to support an award of punitive damages against Defendant.

WHEREFORE, Plaintiffs and Class pray for the relief requested in the Request for Relief set forth at the end of this Petition.

## COUNT III: VIOLATION OF ARTICLE I § 19
## OF THE MISSOURI CONSTITUTION AGAINST DEFENDANT ST. PETERS

176.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Amended Class Action Petition as if fully set forth herein.

177.    Article I § 19 of the Missouri Constitution states "that no person shall be compelled to testify against himself in a criminal cause…."

178.    Article I § 19 of the Missouri Constitution establishes and identifies the privilege against self-incrimination.

179.    The Missouri Rules of Criminal Procedure apply to the prosecution of an ordinance violation, including the prosecution of the Ordinances at issue.

180.    The presumption of innocence and the prosecution's burden to prove guilt beyond a reasonable doubt are inextricable corollaries of Missouri's privilege against self-incrimination and the accusatorial system of justice in this country.

181.    By requiring vehicle owners charged with an Ordinance violation to attempt to prove one of Defendant St. Peters' limited defenses, the Accused are forced to prove their innocence without being afforded the constitutional presumption of innocence, and are thus compelled to testify in order to overcome the Ordinance's presumption of guilt.

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

182.     Plaintiffs and Class are compelled to testify, to prove their innocence, by either making a sworn statement under penalty of perjury or appearing in court under oath.

183.     Since this Class Action concerns an alleged violation of an Ordinance that is predicated on a Missouri criminal law, Plaintiffs and Class must, and shall, be afforded the rights and protections of the Missouri Constitution, including the privilege against self-incrimination.

184.     However, Defendant St. Peters, through its Ordinances, violates this constitutional right by compelling Plaintiffs and Class to testify in order to avoid penalty or further legal action.

185.     By prosecuting Plaintiffs and Class under such unconstitutional Ordinances, St. Peters requires Plaintiffs and Class to pay a fine while denying them their constitutional rights.

186.     As a result of Defendant St. Peters' conduct and its Ordinance, Plaintiffs and members of the Class had their Article I § 19 constitutional rights violated and were injured thereby in excess of $25,000.

187.     As a result of Defendant St. Peters' conduct and its Ordinances, members of the Class with outstanding Citations have had, or will have, their Article I § 19 constitutional rights violated and will thus suffer irreparable harm if this Court does not enter an injunction or other equitable relief.

188.     Plaintiffs and Class claim all legal and equitable remedies they are entitled by law to recover from Defendant for the injuries and losses set forth herein.

189.     The conduct of Defendant was malicious, corrupt, and either intentional or reckless to a degree sufficient to support an award of punitive damages against Defendant.

WHEREFORE, Plaintiffs and Class pray for the relief requested in the Request for

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

Relief set forth at the end of this Petition.

## COUNT IV: VIOLATION OF ARTICLE I § 10
## OF THE MISSOURI CONSTITUTION AGAINST DEFENDANT ST. PETERS

190.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Amended Class Action Petition as if fully set forth herein.

191.    Article I § 10 of the Missouri Constitution states "that no person shall be deprived of life, liberty or property without due process of law."

192.    Plaintiffs and Class had, and have, an established constitutional right not to be deprived of their personal property, in the form of fines paid to St. Peters, without due process of law.

193.    Plaintiffs and Class had, and have, an established constitutional right to a fair hearing in which they can assert all of the legal and factual defenses available to them.

194.    Plaintiffs and Class had, and have, an established constitutional right to a fair hearing in which they are afforded the presumption of innocence, are not required to testify to prove innocence, and are not prosecuted under unlawful ordinance.

195.    The Ordinances conflict with the fundamental rights and protections afforded by Article I § 10 of the Missouri Constitution and is thus unconstitutional because the Ordinances authorize a taking of property, and additional legal action including potential imprisonment, without due process of law by imposing penalties on the Accused in an arbitrary, unreasonable, and capricious manner without a fair hearing and without adequate procedural protections.

196.    The Ordinances are unconstitutional on their face and as applied because it deprives the Accused of due process of law pursuant to Article I § 10 of the Missouri Constitution by establishing liability based on vehicle ownership using an unreasonable

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

presumption of guilt, and further permits a person to be punished without St. Peters proving guilt beyond a reasonable doubt.

197.    Plaintiffs and Class were, and are, not afforded the criminal standard of proof and are thus denied due process of law.

198.    The Ordinances enumerate a limited number of affirmative defenses available to the Accused by which he or she "may" be excused from penalty.

199.    It is irrational and unlawful for the Ordinances to create a rebuttable presumption that the vehicle owner(s) was/were the driver without probable cause and to penalize all owners of record jointly. As such, the Ordinances violate Art. I § 10.

200.    A city cannot create by ordinance a scheme that enlarges the common law, statutory duties, or liability of citizens among themselves. Moreover, a city has no power, by municipal ordinance, to create liability from one citizen to another, nor to relieve one citizen from that liability by imposing it on another.

201.    In addition, according to Defendant St. Peters, the sworn statement of the Accused may not be "satisfactory" enough to prove innocence because, after reviewing the statement, the prosecutor may determine the sworn statement to be "unsatisfactory" and may continue the prosecution.

202.    Defendant St. Peters and/or its Ordinances prohibit the Accused from asserting all available defenses including but not limited to:  i) the vehicle owner(s) cannot honestly recall who the actual driver was at the time of the violation because the vehicle has more than one owner or the vehicle is periodically driven by non-owners (e.g., family members) or ii) the length of time that has passed between the date of the violation and the date the vehicle owner(s) received the Citation renders determination of the actual driver unascertainable.

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

203.    By shifting the burden of proof onto the Accused to prove their innocence and by limiting the defenses available to Plaintiffs and Class to overcome the presumption of guilt and reserving the right to judge defenses as "unsatisfactory," the Ordinances deprive Plaintiffs and Class of adequate due process protections.

204.    The State of Missouri has promulgated no legislation enabling St. Peters to enact the Ordinances or a red light Camera program.

205.    The State of Missouri has promulgated no legislation enabling St. Peters to enact an ordinance that holds *vehicle owners* liable for violations of traffic control signals, nor is there enabling legislation that allows Defendants to create a rule of evidence in its municipal ordinances.

206.    Traffic in St. Peters is already regulated by Missouri state law (MO. REV. STAT. § 304.271.1 and § 304.281.1), as well as St. Peters' Code of Ordinances (§70-953 and § 70-954), both of which mandate that *drivers* shall obey all traffic control devices, including steady red traffic lights.

207.    The due process rights of Plaintiffs and Class have been violated because the Ordinances were enacted without proper authority from the State of Missouri, and the Ordinances do not regulate or control the streets or traffic, but rather lessen the prosecutor's burden of proof for existing traffic regulations and/or solely create revenue.  The Ordinance establishes liability based on ownership. As such, the Ordinance creates an unlawful regulation and jettisons the state law requirement that "the <u>driver</u> of any vehicle shall obey the instructions of any official traffic-control device" (MO. REV. STAT. § 304.271.1) and "whenever traffic is controlled by traffic control signals exhibiting different colored lights… said lights shall indicate and apply <u>to drivers of vehicles</u>…" MO. REV. STAT. § 304.281.1 (emphasis added).

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

208.    It is a violation of due process for Plaintiffs and Class to be prosecuted under an ordinance that is conflict with Missouri law and/or establishes liability on vehicle owners for moving violations.

209.    The presumption of innocence and the prosecution's burden to prove guilt beyond a reasonable doubt are inextricable corollaries of Missouri's privilege against self-incrimination and the accusatorial system of justice in this country.

210.    By requiring vehicle owners charged with an Ordinance violation to attempt to prove one of Defendant St. Peters' limited defenses, the Accused are forced to prove their innocence without being afforded the constitutional presumption of innocence, and are thus compelled to testify in order to overcome the Ordinance's presumption of guilt.

211.    Plaintiffs and Class are compelled to testify, to prove their innocence, by either making a sworn statement under penalty of perjury or appearing in court under oath.

212.    Since this Class Action concerns alleged violations of Ordinances that are predicated on a Missouri criminal law, Plaintiffs and Class must, and shall, be afforded the rights and protections of the Missouri Constitution, including the privilege against self-incrimination. However, Defendant St. Peters, through its Ordinance, violates this constitutional right by compelling Plaintiffs and Class to testify in order to avoid penalty or further legal action.

213.    By prosecuting Plaintiffs and Class under such an unconstitutional Ordinance, St. Peters requires Plaintiffs and Class to pay a fine while denying them their constitutional rights.

214.    As a result of St. Peters' conduct and its Ordinances, Plaintiffs and Class had their Article I § 10 constitutional rights violated and were injured thereby in excess of $25,000.

215.    As a result of St. Peters' conduct and its Ordinance, Plaintiffs and Class have

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

had, or will have, their Article I § 10 constitutional rights violated and will thus suffer irreparable harm if this Court does not enter an injunction or other equitable relief.

216.    Plaintiffs and Class claim all legal and equitable remedies they are entitled by law to recover from Defendant for the injuries and losses set forth herein.

217.    The conduct of Defendant was malicious, corrupt, and either intentional or reckless to a degree sufficient to support an award of punitive damages against Defendant.

WHEREFORE, Plaintiffs and Class pray for the relief requested in the Request for Relief set forth at the end of this Petition.

### COUNT V: UNJUST ENRICHMENT AGAINST DEFENDANT REDFLEX

218.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Amended Class Action Petition as if fully set forth herein.

219.    The red light Camera program and the Ordinances are unlawful, void, conflict with Missouri state law, and violate the Missouri Constitution for multiple reasons, as shown above, including the fundamental rights of Plaintiffs and Class.

220.    Defendant Redflex knew or had reason to know that the Ordinance was void, invalid, and/or unconstitutional.

221.    Defendant Redflex knew or had reason to know that collecting fines under the Ordinance was illegal and inequitable.

222.    Plaintiffs and Class conferred a benefit on Defendant Redflex by being assessed and paying a fine, of which Defendant Redflex received at least a portion.

223.    After receiving said payments, Redflex recognized that a benefit was conferred by receiving money from the Accused through St. Peters and/or performing record keeping functions to document incoming funds from St. Peters on behalf of Plaintiffs and Class.

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

224.   Redflex has accepted and retained monies in the form of fines, costs, and fees paid by Plaintiffs and Class pursuant to the Ordinances and Defendants' red light Camera program.

225.   Because the Ordinance is void and unlawful, it would be unjust for Redflex to retain any benefit in the form of monies paid by Plaintiff and Class.

226.   Redflex possesses monies which rightfully belong to Plaintiff and Class because these monies were collected by means of void and unlawful Ordinances, and which in good conscience ought to be paid back to Plaintiffs and Class.

227.   As such, it is unjust, inequitable, and/or unconscionable for Redflex to retain monies paid by Plaintiffs and Class pursuant to the Ordinances.

228.   As a result of the Defendants' red light camera program and Redflex's conduct, Redflex has been unjustly enriched at the expense of Plaintiffs and Class.

229.   Plaintiffs and Class claim all legal and equitable remedies, including restitution, that they are entitled by law to recover from Redflex for the injuries and losses set forth herein.

230.   The conduct of Defendant was malicious, corrupt, and either intentional or reckless to a degree sufficient to support an award of punitive damages against Defendant.

WHEREFORE, Plaintiffs and Class pray for the relief requested in the Request for Relief set forth at the end of this Petition.

## COUNT VI: ABUSE OF PROCESS AGAINST ALL DEFENDANTS

231.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Class Action Petition as if fully set forth herein.

232.   There is and was no authority entitling Defendants to pursue legal action against Plaintiffs and Class where Defendants knew the Ordinances and/or collection procedure was

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

illegal.

233.    Defendants made use of an illegal, improper, and/or perverted use of process that was neither warranted nor authorized by the process.

234.    Defendants had an improper and/or illegal purpose in engaging in the illegal, improper, and/or perverted use of process.

235.    As a result, Plaintiffs and Class were damaged by Defendants' abuse of process by, among other things, responding to "citations" and/or paying fines pursuant to an invalid Ordinance and/or unlawful collection procedure.

236.    The conduct of Defendants was malicious, corrupt, and either intentional or reckless to a degree sufficient to support an award of punitive damages against Defendants.

WHEREFORE, Plaintiffs and Class pray for the relief requested in the Request for Relief set forth at the end of this Petition.

### COUNT VII: DAMAGES FOR VIOLATION OF MO. REV. STAT. §484.010, *ET SEQ*., AGAINST REDFLEX

237.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Class Action Petition as if fully set forth herein.

238.    MO. REV. STAT.§ 484.010, prohibits any association or corporation, except a professional corporation organized pursuant to the provisions of Chapter 356, R.S.Mo., from engaging in the practice of law or doing law business, and further provides that any association or corporation that violates this prohibition shall be subject to being sued for treble the amount paid to it for any services rendered in violation of this prohibition.

239.    MO. REV. STAT. § 484.010, defines the "practice of law" as "the appearance as an advocate in a representative capacity or the drawing of papers, pleadings or documents or the

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

performance of any act in such capacity in connection with proceedings pending or prospective before any court of record, commissioner, referee or any body, board, committee or commission constituted by law or having authority to settle controversies."

240.    MO. REV. STAT. § 484.020, prohibits Defendant's behavior, in that "No person shall engage in the practice of law or do law business, as defined in section 484.010, or both, unless he shall have been duly licensed."

241.    Defendant Redflex and its employees are prohibited from engaging in the practice of law or doing law business in the State of Missouri.

242.    As alleged previously in this Petition, Redflex plays in integral role in prosecuting violations, processing citations, and collecting fines.  In particular, the Notices of Violations, and other documents received by the Accused, instruct the Accused to call Redflex "customer service" with any questions.

243.    Upon information and belief, Redflex encouraged and/or advised the Accused to simply pay the fine, among other statements that constitute the unauthorized practice of law.

244.    In addition, Redflex or its paid employees (who were not attorneys licensed in the state of Missouri) acted as law enforcement officers in making the initial determination that the ordinance had been violated; acted as prosecutors in filing the charge, in receiving affidavits from car owners, and in sending out notices of the violations; and acted as the judge in considering and ruling on affidavits and/or other submissions from owners who allege they were not the driver at the time of the offense, and in accepting the plea of guilty and receiving the fines.

245.    Redflex has engaged in the practice of law and/or the doing of law business in the State of Missouri and is thus liable for treble damages to Plaintiffs and Class.

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

246.    The conduct of Defendant was malicious, corrupt, and either intentional or reckless to a degree sufficient to support an award of punitive damages against Defendant.

WHEREFORE, Plaintiffs and Class pray for the relief requested in the Request for Relief set forth at the end of this Petition.

## COUNT VIII: MONEY HAD AND RECEIVED AGAINST DEFENDANTS BY SUBCLASS 1

247.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Amended Class Action Petition as if fully set forth herein.

248.    Plaintiff Thompson and Subclass 1 bring this cause of action to reach money that in equity and good conscience should not to be retained by Defendants but should be paid to Plaintiff and Subclass 1.

249.    Defendants have received or obtained possession of monies (including fines, costs, and fees) that rightfully belong to Plaintiff Thompson and Subclass 1, which in equity and good conscience ought to be paid over to Plaintiff Thompson and Subclass 1.

250.    In addition, Defendants obtained this money from Plaintiff Thompson and Subclass 1 by acts of fraud, inequitable conduct, oppression, duress, compulsion, or extortion, as discussed in detail in this Petition.

251.    As a result of the 2006 Ordinance and Defendant's conduct, Defendants possess monies in excess of $25,000, which belong to Plaintiff Thompson and Subclass 1.

252.    Plaintiffs and Class claim all legal and equitable remedies, including restitution, which they are entitled by law to recover from Defendants for the injuries and losses set forth herein.

253.    The conduct of Defendants was malicious, corrupt, and either intentional or

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

reckless to a degree sufficient to support an award of punitive damages against Defendants.

WHEREFORE, Plaintiffs and Class pray for the relief requested in the Request for Relief set forth at the end of this Petition.

### COUNT IX: MONEY HAD AND RECEIVED AGAINST DEFENDANTS BY SUBCLASS 2

254.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Amended Class Action Petition as if fully set forth herein.

255.    Plaintiff McCabe and Subclass 2 bring this cause of action to reach money that in equity and good conscience should not to be retained by Defendants but should be paid to Plaintiff and Subclass 2.

256.    Defendants have received or obtained possession of monies (including fines, costs, and fees) that rightfully belong to Plaintiff and Subclass 2, which in equity and good conscience ought to be paid over to Plaintiff McCabe and Subclass 2.

257.    In addition, Defendants obtained this money from Plaintiff McCabe and Subclass 2 by acts of fraud, inequitable conduct, oppression, duress, compulsion, or extortion, as discussed in detail in this Petition.

258.    As a result of the 2013 Ordinance and Defendant's conduct, Defendants possess monies in excess of $25,000, which belong to Plaintiff McCabe and Subclass 2.

259.    Plaintiffs and Class claim all legal and equitable remedies, including restitution, which they are entitled by law to recover from Defendants for the injuries and losses set forth herein.

260.    The conduct of Defendants was malicious, corrupt, and either intentional or reckless to a degree sufficient to support an award of punitive damages against Defendants.

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

WHEREFORE, Plaintiffs and Class pray for the relief requested in the Request for Relief set forth at the end of this Petition.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs and Class pray for the following relief:

A.   A Declaratory Judgment on the rights and issues as set forth in Count I of this Petition.

B.   An order certifying the Class as requested herein;

C.   An order appointing the undersigned as lead counsel for the Class;

D.   A judgment awarding restitution, compensatory damages, enhanced damages, punitive damages, and/or all other appropriate damages to Plaintiffs and members of the Class;

E.   A judgment awarding equitable or injunctive relief as permitted by law or equity including a preliminary and/or permanent injunction enjoining Defendants from continuing the unlawful conduct as set forth herein and directing Defendants to identify, with Court supervision, members of the Class and pay them restitution and disgorgement of all monies acquired by Defendants by means of any code or ordinance declared by this Court to be unlawful;

F.   A judgment awarding attorneys' fees and costs;

G.   Providing such further relief as may be fair and reasonable.

## JURY TRIAL DEMAND

Plaintiffs and Class demand a trial by jury on all issues so triable.

Electronically Filed - St Charles Circuit Div - January 15, 2015 - 05:28 PM

Respectfully Submitted,

**STURYCZ WATTS, LLC**

By:      /s/ Nathan D. Sturycz

Nathan D. Sturycz, #61744
Patrick A. Watts, #61701
Joel S. Halvorsen, #67032
5757 Phantom Drive, Suite 250
St. Louis, MO  63042
Phone: (877) 314-3223
Fax: (888) 632-6937
nathan@swattslaw.com
pwatts@swattslaw.com
joel@swattslaw.com

*Attorneys for Plaintiffs*